**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANDREW DONOHO and GLORIA FERGUSON, individually and on behalf of all others similarly situated, | |
|       Plaintiff, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| v. | |
| Hims & Hers Health, Inc. and Hims, Inc. | **JURY DEMANDED** |
|       Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Andrew Donoho and Gloria Ferguson ("Plaintiffs"), by their undersigned counsel, on behalf of themselves and all persons similarly situated who purchased "compounded semaglutide" from Defendants, bring this class action lawsuit against Hims & Hers Health, Inc. and Hims, Inc. ("Defendants" or "Hims & Hers" collectively). Plaintiff alleges the following upon information and belief, except for those allegations that pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge.

**INTRODUCTION**

1.    Hims & Hers advertises and sells a product it calls "compounded semaglutide." Consumers inject this product into their bodies.

2.    Hims & Hers consistently advertises this product as being made with "the same active ingredient" as the weight loss and diabetes drugs Ozempic® and Wegovy®. That is false.

3.    In fact, Defendant uses a different active ingredient than the active ingredient used in Ozempic® and Wegovy®. Hims & Hers's active ingredient is manufactured using a fundamentally different process which produces a different active ingredient. Although both

1

products contain the semaglutide peptide molecule, the Hims & Hers product contains peptides that are not contained in Ozempic® and Wegovy®, among other differences. This different active ingredient made by a different process has never been meaningfully tested for safety or effectiveness or evaluated by FDA, unlike the exhaustive testing and FDA approval process undertaken for Ozempic® and Wegovy®.

4.     Consumers do not want to inject substances into their body without reasonable assurances that the substance is safe and effective. If Hims & Hers told consumers the truth—that its product is different than Ozempic® and Wegovy®, uses a different active ingredient with peptides in addition to semaglutide, is manufactured with little to no oversight, has never been meaningfully tested for safety or effectiveness, and has never been evaluated by FDA—then consumers would either not buy the product or they would pay far less for it. Instead, Hims & Hers misleads consumers into believing its product is just as safe and effective as Ozempic® and Wegovy®, including because it uses "the same active ingredient," which is false.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act of 2005, because (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different states. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over Defendants because the injuries upon which Plaintiffs' action are based occurred or arose out of activities that Defendants specifically engaged in within the State of Illinois. Defendants knowingly and intentionally advertised and

distributed its products for sale in Illinois, and Plaintiffs purchased Defendants' products from Illinois.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of Illinois, including within the Chicago area. For example, Hims & Hers states that it is "Headquartered wherever you are" and that it is a "remote-first company." Moreover, based upon publicly available information, at least about fifty Hims & Hers employees work in the Chicago area, including executives and managers. Moreover, Hims & Hers' operation, including healthcare delivery and prescription drug distribution, operate within a state-specific regulatory framework, so, upon information and belief, many of those Chicago-area employees are responsible for the sale and delivery of prescription drugs within Illinois, including to Plaintiffs.

## PARTIES

8. Plaintiff **Andrew Donoho** is, and at all times referenced in this Complaint was, a citizen of Illinois.

9. Mr. Donoho lives in Decatur, Illinois, which is where he purchased Hims & Hers's "compounded semaglutide" product online.

10. Mr. Donoho heard about Hims & Hers from their advertisements, and then reviewed the hims.com website and smartphone app around February 6, 2025.

11. Mr. Donoho purchased 3 vials of the product around February 6, 2025 and another 6 vials around April 10, 2025. He stopped taking the product with several bottles left over.

12. One of the vials Mr. Donoho purchased includes the following identifying information:



13.     Mr. Donoho did not purchase the product at the direction of a physician or other health care provider. He made the purchase decision himself based upon Hims & Hers's advertisements, including those on the Hims & Hers app and hims.com website representing that the product was made with "the same active ingredient as Ozempic® and Wegovy®."

14.     After deciding to purchase the product based upon Hims & Hers's advertising, Mr. Donoho filled out an online questionnaire asking some basic health-related questions. After filling out the questionnaire, and then entering his credit card information, he received an email from Hims & Hers stating that he was approved for a prescription for "compounded semaglutide." Mr. Donoho never spoke to a physician or other health care provider before purchasing the product. At no point in the purchasing process, did any prescriber ever discuss any other drug options, risks, nor the composition of the product in any way.

15.     Based upon the Hims & Hers advertising, Mr. Donoho believed the product was as safe and effective as Ozempic® and Wegovy®, including because it used "the same active ingredient as Ozempic® and Wegovy®."

16.     If Mr. Donoho had known that Hims & Hers's "compounded semaglutide" product was not the same as Ozempic® and Wegovy®," did not use "the same active ingredient as Ozempic® and Wegovy®," and used a different active ingredient made by a different process that results in a different collection of peptides than Ozempic® and Wegovy®, for which there is a risk of health complications, he would not have purchased the product or would have paid far less for

4

it.

17.     Plaintiff **Gloria Ferguson** is, and at all times referenced in this Complaint was, a citizen of Illinois.

18.     Ms. Ferguson lives in Peoria, Illinois, which is where she purchased Hims & Hers's "compounded semaglutide" product from the forhers.com website.

19.     She heard about Hims & Hers from one of their advertisements, and then reviewed the forhers.com website around February 6, 2025.

20.     Ms. Ferguson purchased 5 vials of the "compounded semaglutide" product around February 6, 2025.

21.     Ms. Ferguson did not purchase the product at the direction of a physician or other health care provider. She made the purchase decision herself based upon Hims & Hers's advertisements, including those on the Hims & Hers website at forhers.com representing that the product was made with "the same active ingredient as Ozempic® and Wegovy®."

22.     After deciding to purchase the product based upon Hims & Hers's advertising, Ms. Ferguson filled out an online questionnaire asking some basic health-related questions. After filling out the questionnaire, and then entering her credit card information, she received an email from Hims & Hers stating that she was approved for a prescription for "compounded semaglutide." Ms. Ferguson never spoke to a physician or other health care provider before purchasing the product. At no point in the purchasing process, did any prescriber ever discuss any other drug options, risks, nor the composition of the product in any way.

23.     Based upon the Hims & Hers advertising, Ms. Ferguson believed the product was as safe and effective as Ozempic® and Wegovy®, including because it used "the same active ingredient as Ozempic® and Wegovy®."

24.     If Ms. Ferguson had known that Hims & Hers's "compounded semaglutide" product was not the same as Ozempic® and Wegovy®," did not use "the same active ingredient as Ozempic® and Wegovy®," and used a different active ingredient made by a different process that results in a different collection of peptides than Ozempic® and Wegovy®, for which there is a risk of health complications, she would not have purchased the product or would have paid far less for it.

25.     Defendant **Hims & Hers Health, Inc**. is, and at all times mentioned in this Complaint was, a publicly traded corporation organized and existing under the laws of the state of Delaware with its principal place of business purportedly in San Francisco, California.

26.     Defendant **Hims, Inc.** is, and at all times mentioned in this Complaint was, a publicly traded corporation organized and existing under the laws of the state of Delaware with its principal place of business purportedly in San Francisco, California.

## FACTUAL ALLEGATIONS

I.     **Products at Issue.**

   A.     **Novo Nordisk's Ozempic® and Wegovy®.**

27.     Novo Nordisk Inc. ("Novo Nordisk") manufactures and sells Ozempic® and Wegovy®.  Novo Nordisk also manufactures the semaglutide active ingredient used in Ozempic® and Wegovy®. Novo Nordisk does not sell its semaglutide active ingredient to any other company, including Hims & Hers.[1]

28.     Semaglutide is a peptide, which is a biological molecule composed of a long chain of amino acids in a specific sequence that is unique to that peptide. There are 20 different naturally

---

[1] Novo Nordisk Apr. 29, 2025 Letter to FDA at 1 n.1, https://downloads.regulations.gov/FDA-2017-N-2562-0034/attachment_1.pdf.

6

occurring amino acids. These can be arranged in nearly infinite different sequences to make up peptides and proteins, which are the biological molecules that are responsible for most of the human body's functions. Proteins are just longer peptides.

29.     Any change in the amino acid sequence of semaglutide creates a different peptide and can change its function and the safety and effectiveness of any drug product containing that altered peptide.

30.     Once injected into a consumer, semaglutide molecules mimic the naturally occurring hormone glucagon-like peptide-1 ("GLP-1"). However, while naturally occurring GLP-1 lasts only about 1.5 minutes before the body's enzymes break it down, semaglutide resists that breakdown for more than 7 days, resulting in glucose control and weight loss. This difference in how long semaglutide last in the body compared to GLP-1 is due to biochemical modifications Novo Nordisk scientists made to the GLP-1 peptide molecule. The U.S. Patent Office awarded the scientists patents for their invention.

31.     Novo Nordisk uses a specific biological process to manufacture its biological active ingredient.[2] This process uses recombinant DNA technology, which is a biological process where living organisms (yeast) produce the precise amino acid sequence of semaglutide.[3] Basically, Norvo Nordisk scientists manipulate yeast cells through biotechnological methods so that the cells produce the semaglutide peptide. This produces extremely pure copies of the peptide with very few impurity peptides having different amino acid sequences or other chemical impurities, but it is expensive and technologically complicated.

32.     Novo Nordisk scientists spent many years performing scientific studies on

---

[2] Novo Nordisk Oct. 22, 2024 Letter to FDA at 5, https://downloads.regulations.gov/FDA-2017-N-2562-0029/attachment_1.pdf.
[3] *Id.*

Ozempic® and Wegovy® in order to demonstrate that Ozempic® and Wegovy® are safe and effective, including many large clinical trials in humans. This extensive scientific work culminated in an exhaustive FDA review and approval process for each drug product.

**B.     Hims & Hers's "Compounded Semaglutide."**

33.     Hims & Hers sells a purported knock-off version of Ozempic® and Wegovy®. Unlike Novo Nordisk's FDA-approved products, the knock-off product has never been meaningfully tested for safety or effectiveness, nor evaluated in any way by FDA.

34.     Hims & Hers misleads consumers into believing its "compounded semaglutide" product is the same as Ozempic® and Wegovy®, including because it uses "the same active ingredient." But that is false.

35.     In fact, Hims & Hers uses a different active ingredient than the active ingredient used in Ozempic® and Wegovy®.

36.     Hims & Hers's active ingredient is not made using the biological recombinant DNA process in yeast cells that is used to manufacture Ozempic® and Wegovy®'s active ingredient.

37.     Instead, Hims & Hers's active ingredient is made using a synthetic chemical process.

38.     In this chemical process, each amino acid is added to the chain one by one using chemical reactions. Along with the semaglutide peptide molecule, this chemical process also produces peptides that are different than semaglutide, having missing amino acids, extra amino acids, substituted amino acids, and/or truncated amino acid sequences, among other problems not associated with the biological recombinant DNA process used by Novo Nordisk.

39.     The synthetic chemical process is much cheaper and easier than the biological recombinant DNA process, but it results in a different active ingredient with a different collection

of peptides, along with the semaglutide molecule. Among other differences, this process results in peptides that are not contained in Ozempic® and Wegovy®.

40.     Testing confirmed that Hims & Hers's active ingredient is not "the same," includes peptides that are not contained in Ozempic® and Wegovy®, and was made using a synthetic chemical process, not a biological recombinant DNA process like Novo Nordisk uses to manufacture its semaglutide active ingredient.

41.     The different active ingredients containing different peptide molecules can have serious health consequences, including immunogenicity, which is when a foreign substance (like novel peptides) triggers a consumer's immune response. This can result in immunologic side effects such as rash, flu-like symptoms, inflammation, or anaphylaxis, among others.

42.     This immunogenic response to the different active ingredient can also result in cross reactivity, where a consumer's immune system mounts a response not only against the different active ingredient, but also against authentic Ozempic® and Wegovy® if a consumer takes it in the future, risking serious side effects and diminished efficacy.

43.     Worse still, this immunogenic response to the different active ingredient can also result in cross reactivity with a consumer's own naturally occurring GLP-1 peptide hormone, with serious health consequences.

44.     Hims & Hers's "compounded semaglutide" product also includes a chemical called benzyl alcohol,[4] which is not included in Ozempic® and Wegovy®[5]. This chemical could negatively interact with peptides contained in Hims & Hers's product. Upon information and belief, Hims & Hers has never tested whether this chemical has adverse effects in combination

---

[4] https://news.hims.com/newsroom/quality-transparency-making-certificates-of-analysis-available-to-every-hims-hers-customer.
[5] www.accessdata.fda.gov/drugsatfda_docs/label/2025/215256s026lbl.pdf.

with the unique active ingredient contained in its product.

45.     Novo Nordisk has also stated that chemically synthesized active ingredients like Hims & Hers's are "meaningfully different" than Novo Nordisk's biologically produced active ingredient in Ozempic® and Wegovy®.[6]

46.     Novo Nordisk tested numerous "compounded semaglutide" products and active ingredients and compared them to its Ozempic® and Wegovy® products and active ingredient. Upon information and belief, Hims & Hers's product was among those Novo Nordisk tested. Based upon this testing, Novo Nordisk petitioned FDA to add semaglutide to FDA's list of products that present demonstrable difficulties for compounding.[7] Novo Nordisk explained to FDA that

> The semaglutide bulk drug substance used by compounders is not the same semaglutide used in [Novo Nordisk's] FDA-approved medicines. [Novo Nordisk] manufactures its semaglutide in yeast using recombinant DNA technology, whereas the compounders use active pharmaceutical ingredients that are manufactured by chemical synthesis. [Novo Nordisk] does not sell semaglutide to any entities for use in compounding. Furthermore, the semaglutide used in [Novo Nordisk's] FDA-approved semaglutide medicines is manufactured exclusively by [Novo Nordisk] and is not obtained from a third-party supplier. For the purposes of this supplement, we will refer to the compounded products as containing "semaglutide," even though these bulk drug substances are meaningfully different from [Novo Nordisk's] semaglutide.[8]

47.     Hims & Hers also recently announced the launch of a new oral version of its "compounded semaglutide" product. Hims & Hers uses substantially the same advertising content to mislead consumers about this oral product as well. The putative class herein also includes consumers who purchased Hims & Hers's oral version of its "compounded semaglutide" product.

---

[6] Novo Nordisk Apr. 29, 2025 Letter to FDA at 1 n.1, https://downloads.regulations.gov/FDA-2017-N-2562-0034/attachment_1.pdf.
[7] Id.
[8] Id.

The term "compounded semaglutide," as used throughout this Complaint, also includes Hims & Hers's oral version of the product.

## II. Hims & Hers False and Misleading Statements.

### A. Hims & Hers's Websites: forhers.com and hims.com.

48. Hims & Hers's websites and apps include the false and misleading statements, as well as at least some of its off-website advertising and promotional activity.

49. Hims & Hers operates two websites, one directed to women (forhers.com) and one directed to men (hims.com). Both websites repeatedly advertise Hims & Hers's "compounded semaglutide" as being made with "the same active ingredient as Ozempic® and Wegovy®." These statements are false and misleading because, for example, the product is **not** made with "the same active ingredient as Ozempic® and Wegovy®."

50. Hims & Hers main homepages at hims.com and forhers.com are organized similarly. Both have a menu in the upper right-hand corner where consumers are presented with Hims & Hers product offerings, including "Weight Loss," "Sexual Health," "Testosterone," among other categories of products.

51. If a consumer clicks the "weight loss" menu option, then two more options are available from the menu: "GLP-1 injections" and "Weight loss treatments":



52. If a consumer selects "GLP-1 injections," they are presented with a series of

questions about their health and weight lose goals. After answering the questions, the consumer is shown the following on hims.com:



53.   Consumers are also shown the following:



54.     The forhers.com website shows a similar advertisement after answering the health and weight loss questions presented to consumers after selecting "GLP-1 injections" from the "weight Loss" menu:



55.     If the consumer selects the "Weight loss treatments" option instead of "GLP-1 injections" from the "weight loss" menu, they are then presented with this advertisement:



56.     The forhers.com website shows a similar advertisement if the consumer selects the "Weight loss treatments" option instead of "GLP-1 injections" from the "weight loss" menu:



57. Both the hims.com and forhers.com websites have prominently displayed these deceptive advertisements before the purchasing decision for all consumers during all relevant times since the product was first launched around May 2024 through the time of filing.

58. For example, as of August 2024, when a user clicked the "weight loss" link in the main menu on hims.com, they were presented with the following advertisement[9]:

---

[9] https://web.archive.org/web/20240819163946/https://www.hims.com/weight-loss.



59.     The forhers.com website had substantially the same content in August 2024[10]:



60.     As another example, as of March 2025, when a user clicked the "weight loss" link

in the main menu on hims.com, they were presented with the following advertisement[11]:

---

[10] https://web.archive.org/web/20240819134217/https://www.forhers.com/weight-loss.
[11] https://web.archive.org/web/20250306104722/www.hims.com/weight-loss.



61.     The forhers.com website had substantially the same content in February 2025[12]:



62.     Hims & Hers also has smartphone apps. These apps are integrated with the website and contain substantially the same false and misleading content as the website, including

---

[12] https://web.archive.org/web/20250215022254/www.forhers.com/weight-loss.

repeatedly falsely and misleadingly characterizing the "compounded semaglutide" product as being made with the "same active ingredient as Ozempic® and Wegovy®."

63.　For example, once a consumer indicates they are interested in learning about weight loss medications, the app presents the consumer with substantially the same health and weight loss questions as described above for the websites. After answering the questions, the consumer is shown the following:



64.　Thus, any consumer who purchased Hims & Hers's "compounded semaglutide" from either the Hims or Hers side of the business since Hims & Hers first offered the product around May 2024 would have reviewed and relied upon these advertisements before deciding to purchase the product.

65.　Ms. Ferguson relied upon the above misleading statements on the forhers.com

website as it existed around February 6, 2025 before purchasing Hims & Hers's "compounded semaglutide" product.

66.     Mr. Donoho relied upon the above misleading statements on the hims.com website and the app as they existed around February 6, 2025 before purchasing Hims & Hers's "compounded semaglutide" product.

67.     The "Frequently Asked Questions" section of the websites again deceives consumers about the nature of the product. For example, under "What is compounded semaglutide?" the website states:

> "Working with a licensed compounding pharmacy, Hims is able to provide medications to meet our patients' unique needs. ***Hims offers compounded semaglutide, a GLP-1 injection with the same active ingredient as Wegovy and Ozempic***. This differs from brand-name weight loss injections, which typically come in a preloaded injection pen. But don't worry, Hims will show you exactly how to take your injection. And you'll have access to unlimited messaging."[13]

68.     This statement also reinforces the "same active ingredient" messaging by misleading consumers into believing the product only "differs from brand-name weight loss injections" because they "come in a preloaded injection pen." Hims & Hers misleadingly conceals the other significant differences between the products.

69.     Again, under the heading "How is Hims dealing with GLP-1 shortages, Hims & Hers states:

> Hims is working closely with trusted partners to support our customers in accessing the weight loss treatment that is right for them. ***While name-brand medications like Ozempic® and Wegovy® are currently in short supply, Hims also provides compounded GLP-1s formulated with the same active ingredient.*** This means you can start your weight loss journey with confidence.[14]

---

[13] https://web.archive.org/web/20240720133611/https://www.hims.com/weight-loss (emphasis added); https://web.archive.org/web/20240819134217/https://www.forhers.com/weight-loss.
[14] *Id.* (emphasis added).

**B.      Hims & Hers's Social Media, Television, and Other Ads Funnel Consumers to Its Websites.**

70.      Hims & Hers only markets direct-to-consumer; it does not market directly to doctors or other authorized prescribers. At the very least, any advertising directed toward prescribers (if any) pales in comparison to those directed to consumers.

71.      Hims & Hers heavily advertises its products to consumers in nearly all media channels, including television, social media platforms (e.g., Facebook, Instagram, TikTok, YouTube, Reddit), paid search (e.g., Google Ads), radio, billboards, magazines, newspapers, and outdoor (e.g., billboards, signs), among others.

72.      Hims & Hers spends heavily on major sporting events on television. Its commercial during the 2025 Super Bowl drew outrage from key U.S. senators[15] and FDA's commissioner[16] for misleading consumers about potential risks associated with its "compounded semaglutide" product.

73.      Hims & Hers also heavily promotes its product through paid influencers, from famous stars to lesser-known influencers in more niche communities. For example, Hims & Hers has worked with influencers such as Miley Cyrus, Kristen Bell, Rob Gronkowski, Alex Rodriguez, and Jennifer Lopez.

74.      This massive media blitz serves to funnel consumers into Hims & Hers website where they are shown the false and misleading statements described above. It also has smartphone apps, but the apps are integrated with the website and includes the substantially same content.

---

[15] Sen. Durbin & Sen. Marshall, Feb. 7, 2025, Letter to FDA,
https://www.marshall.senate.gov/wp-content/uploads/Durbin-Marshall_FDA-Letter_SB-DTC-Telehealth-Ad-output-FINAL.pdf.
[16] Martin Makary, The FDA's Overdue Crackdown on Misleading Pharmaceutical Advertisements, *JAMA* (Sept. 12, 2025),
https://jamanetwork.com/journals/jama/fullarticle/2839061.

75.     At least some of Hims & Hers's social media advertisements also include substantially similar false and misleading representations as the websites. For example, a Hims & Hers advertisement that ran on at least Facebook in November 2025, showed the following:



III.    **FDA Warned Hims & Hers that this Same Advertising Is False and Misleading.**

76.     FDA sent a warning letter to Hims & Hers on September 9, 2025, concluding that its website content was "false or misleading."[17]

77.     Among other concerns, FDA focused on the statement "[w]eekly injectable GLP-1 with the same active ingredient as Ozempic and Wegovy," which appears on hims.com and forhers.com. FDA concluded that these statements "imply that your products are the same as an

---

[17] FDA Warning Letter to Hims & Hers for the Hers Website (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hims-hers-health-inc-dba-hers-09092025; FDA Warning Letter to Hims & Hers for the Hims Website (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hims-hers-health-inc-dba-hims-09092025

FDA-approved product when they are not," so "these claims are false or misleading."[18]

**IV.    Hims & Hers's Prescribers Do Not Influence Consumers' Decision to Purchase the Product.**

78.    Consumers select the product they want to purchase before ever interacting with a Hims & Hers prescriber. This was Ms. Ferguson's and Mr. Donoho's experience as well. Both Ms. Ferguson and Mr. Donoho selected "compounded semaglutide" after relying upon Hims & Hers advertising, believing it was made with "the same active ingredient as Ozempic® and Wegovy®," before ever receiving a communication from a prescriber.

79.    Ms. Ferguson and Mr. Donoho also submitted their credit card and other billing information before ever receiving any communication from a Hims & Hers prescriber.

80.    As described above, after a consumer decides to proceed with purchasing "compounded semaglutide," they are presented a handful of questions.

81.    After these questions and additional deceptive advertisements, consumers can click a link to "continue with Compounded Semaglutide":



Continue with Compounded Semaglutide

82.    After clicking that link, the consumer enters their address and credit card information. It then states that a "licensed provider" will respond to the consumers' decision.

83.    Thus, consumers choose the "compounded semaglutide" product without any input from an authorized prescriber.

84.    Neither Plaintiff ever spoke with a Hims & Hers "licensed provider." They simply received a message from one of Hims & Hers's prescribers informing them that they had been

---

[18] Id.

approved for "compounded semaglutide."

85.     This message from a "licensed provider" appears to be an automated copy-and-paste message. Both of Plaintiffs' messages from prescribers approving the sale of "compounded semaglutide" are substantially similar in all relevant parts.

86.     Moreover, both of Plaintiffs' apparently copy-and-pasted messages from prescribers includes the same false and misleading representation: "The medication I'm prescribing you is proven to reduce appetite and promote weight loss." This is false and misleading because Hims & Hers's product has never been "proven" to reduce appetite and promote weight loss; only Wegovy® has been so proven. This representation implies clinical studies were performed on the product, but no such studies have been performed.

87.     At no point in the purchasing process, does any prescriber discuss any other options, risks, nor the composition of the product in any way.

88.     No prescriber ever discusses whether Hims & Hers's "compounded semaglutide" product is "the same" as Ozempic® and Wegovy® or actually contains a different active ingredient with a different mixture of peptides that present risks not associated with Ozempic® and Wegovy®. They simply prescribe "compounded semaglutide" at a consumer's request.

89.     Thus, it is Hims & Hers's advertising that causes consumers to purchase the "compounded semaglutide" product. The purported "licensed providers" who rubber stamp the consumers' choice do not influence that purchasing decision in any way.

90.     Moreover, Hims & Hers does not accept health insurance or any government health programs. Consumers must pay 100% out of pocket, like Plaintiffs here did. So there are no third-party payors that could influence the purchasing decision in any way or cover any of the costs.

## V.     Hims & Hers's False and Misleading Statements are Highly Material to Consumers.

91.     These false and misleading statements are highly material to reasonable consumers,

who do not want to inject potentially dangerous compounds into their bodies.

92. The context in which consumers confront these false and misleading statements is relevant. Reasonable consumers know nearly nothing about drugs, their composition, or their safety and efficacy. They cannot independently evaluate representations about the drugs. Instead, reasonably consumers rely upon companies selling drugs to accurately describe the drugs.

93. Almost all consumers of prescription drugs have only taken innovator drug products (FDA-approved through New Drug Applications) or generic drug products (FDA-approved through Abbreviated New Drug Applications). These drug applications contain exhaustive scientific testing and are thoroughly reviewed by the FDA according to its world-renowned "gold standard" review process. Drug companies cannot misrepresent their drugs under this statutory and regulatory framework.

94. Thus, reasonable consumers generally trust representations about drugs.

95. Hims & Hers takes advantage of that trust through its false and misleading advertising.

96. Reasonable consumers do not have much, if any, experience with "compounded drugs" provided by telehealth companies.

97. Hims & Hers is in a superior position to know the true nature of its product.

98. Mass-marketed "compounded drugs" sold by telehealth companies like Hims & Hers is a very recent phenomenon. These companies take advantage of purported loopholes in the statutory and regulatory framework that has governed the sale of prescription drugs for decades. These purported loopholes left room for the ancient art of compounding, which was historically local, rare, and small-scale. But modern technological advances in internet-based commerce, sophisticated logistics, and a globalized supply chain allow scale and reach never imagined when

the drug laws were passed.

99.     The result is the massive-scale advertising and sale of knock-off drugs with little regulatory oversight (euphemistically described as "compounding"), although reasonable consumers are not aware of this lack of oversight. Reasonable consumers believe these drugs are tested, evaluated, and regulated like the brand-name and generic drugs they have historically been prescribed by trusted doctors.

100.    It is well established that, particularly with biological molecules like peptides and proteins, "the process defines the product."[19]

101.    At least two peer-reviewed scientific articles have been published detailing the significant differences between chemically produced synthetic active ingredient like Hims & Hers's and the biologically produced active ingredient in Ozempic® and Wegovy®.[20] These articles include data from detailed scientific analysis of "compounded semaglutide" products showing the significant differences. Upon information and belief, Hims & Hers's "compounded semaglutide" was among the products studied in these articles.

102.    Novo Nordisk has filed submissions with FDA requesting that semaglutide be placed on FDA's list of products that present demonstrable difficulties for compounding due to the differences in the active ingredients produced by the different processes.[21] Novo Nordisk submitted data from scientific testing on various chemically synthesized "compounded

---

[19] Arne Staby et al., *Influence of Production Process and Scale on Quality of Polypeptide Drugs: A Case Study on GLP-1 Analogs*, 37 Pharm. Res. 120, 2 (2020).

[20] Morten Hach et al., *Impact of Manufacturing Process and Compounding on Properties and Quality of Follow-On GLP-1 Polypeptide Drugs*, 41 Pharm. Res. 1991 (2024); Arne Staby et al., *Influence of Production Process and Scale on Quality of Polypeptide Drugs: A Case Study on GLP-1 Analogs*, 37 Pharm. Res. 120 (2020).

[21] *See, e.g.,* Novo Nordisk Apr. 29, 2025 Letter to FDA, https://downloads.regulations.gov/FDA-2017-N-2562-0034/attachment_1.pdf.

semaglutide" products showing the significant differences between the active ingredients in those products and the active ingredient in Ozempic® and Wegovy®.[22] Upon information and belief, Hims & Hers's "compounded semaglutide" was among the products disclosed in these FDA submissions, although the data was submitted confidentially.

103.     Testing performed on Hims & Hers's "compounded semaglutide" product has demonstrated it is in fact a different active ingredient that, along with the semaglutide peptide, also contains peptides that are not in Ozempic® and Wegovy®. These different peptides are the result of the fundamentally different chemical process used to produce the active ingredient compared to the biological process used to produce the active ingredient contained in Ozempic® and Wegovy®.

104.     An FDA guidance explains that "[d]ifferences between the peptide-related impurities in a proposed generic synthetic peptide and those in [innovator peptide] of [recombinant DNA] origin could produce different impurity profiles, which could adversely affect the safety or effectiveness of a proposed generic synthetic peptide product, if uncontrolled."[23]

105.     FDA guidance further explains that chemical synthesis of peptides can lead to "insertion, deletion, or modification of amino acid sequences or residues," and other peptide impurities that "create the potential for differences in immunogenicity or may otherwise affect the safety or effectiveness of a peptide drug product."[24]

106.     These amino acid modifications, even if seemingly minor, have the potential to impact T-cell response because changes in amino acid sequence can either create new T-cell epitopes, destroy existing epitopes or change HLA binding profiles.

---

[22] *See, e.g., id.* at 7-15, appendix.
[23] FDA, *ANDAs for Certain Highly Purified Synthetic Peptide Drug Products that Refer to Listed Drugs of rDNA Origin: Guidance for Industry* (May 2021).
[24] *Id.*

107.    Even seemingly small amounts of these novel peptide impurities can have significant health consequences, particularly after repeated injections over time.

108.    It is well established that the differences between the biological recombinant DNA and synthetic chemical processes lead not only to different active ingredients with different peptide impurities, but can also lead to different clinical effects, particularly including immunogenicity.[25]

109.    Ozempic® and Wegovy®, with their unique active ingredient, have been extensively studied and evaluated by FDA, including for any immunogenic potential. Hims & Hers's "compounded semaglutide" has not been meaningfully studied or evaluated by FDA at all, let alone for immunogenicity.

110.    The peptides in Hims & Hers's product that are not present in Ozempic® and Wegovy®, can trigger this immune response. This can result in serious health consequences for consumers.

111.    For example, peptide impurities can cause immune-mediated side effects, such as flu-like symptoms, inflammation, rash, or anaphylaxis.

112.    Another potentially severe consequence of immunogenic peptide impurities is cross-reactivity, where the immune response generated by the peptide impurities also targets other similar molecules.

113.    Cross-reactivity can extend to Ozempic® and Wegovy®. Thus, injecting untested immunogenic peptide impurities that are not contained in Ozempic® and Wegovy® can limit the effectiveness of Ozempic® and Wegovy® if the consumer takes the authentic drugs in the future.

---

[25] Morten Hach et al., *Impact of Manufacturing Process and Compounding on Properties and Quality of Follow-On GLP-1 Polypeptide Drugs*, 41 Pharm. Res. 1991 (2024); Arne Staby et al., *Influence of Production Process and Scale on Quality of Polypeptide Drugs: A Case Study on GLP-1 Analogs*, 37 Pharm. Res. 120 (2020).

114. Worse still, cross-reactivity can extend to endogenous GLP-1. If this happens, the consumer's own immune system can target the consumer's own naturally occurring GLP-1, leading to serious health consequences.

115. Similar types of peptide-related impurities in other peptide active ingredients have been found to pose significant safety risks, including immunogenicity.[26] These other peptide active ingredients include BPC-157, Cathelicidin LL-37, Emideltide, Epitalon, GHK-Cu, GHRP-2, GHRP-6, Ipamorelin acetate, Kisspeptin-10, Mechano growth factor pegylated, Melanotan II, MOTs-C, Semax (heptapeptide), and Thymosin beta-4, fragment (LKKTETQ).[27]

116. Thus, the differences between Hims & Hers's chemically synthesized active ingredient and the biologically derived active ingredient used in Ozempic® and Wegovy® is highly material to reasonable consumers.

117. Reasonable consumers would not inject untested substances into their body if they were told the risk that those substances could be harmful.

118. Hims & Hers knows this, which is why it intentionally misleads reasonable consumers into believing the product is made with "the same active ingredient as Ozempic® and Wegovy®" and falsely and misleadingly implying that the product is as safe and effective as Ozempic® and Wegovy®.

119. Hims & Hers never informed Plaintiffs or the putative class of this risk associated with its "compounded semaglutide" product. To the contrary, it conceals the differences and risks from consumers.

---

[26] FDA, *Certain Bulk Drug Substances for Use in Compounding that May Present Significant Safety Risks*, https://www.fda.gov/drugs/human-drug-compounding/certain-bulk-drug-substances-use-compounding-may-present-significant-safety-risks.
[27] *Id.*

## CLASS ALLEGATIONS

120.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of the following classes:

    a.    **Nationwide Class:** All persons in the United States who purchased Hims & Hers's "compounded semaglutide."

    b.    **Alternative Illinois Class**: All persons in Illinois who purchased purchased Hims & Hers's "compounded semaglutide."

    c.    Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

121.    Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors; those who purchased the Products for resale; those who make a timely election to be excluded from the classes; and the judge to whom the case is assigned and any immediate family members thereof.

122.    The Class Period begins on the date the product was first offered for sale, which appears to be around May 2024 and ending on the date of entry of judgment

123.    **Numerosity:** The members of the Class are so numerous that joinder of all class members is impracticable. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

124.    **Predominance of Common Questions of Law and Fact:** Questions of law and fact that are common to the members of the Class predominate over questions that are specific to individual members. These common questions of law and fact include, but are not limited to, the

following:

    a.    Whether Defendants' statements that their "compounded semaglutide" product is made with "the same active ingredient" as Ozempic® and Wegovy® are false and/or misleading.

    b.    Whether Defendants' statements that their "compounded semaglutide" product is made with "the same active ingredient" as Ozempic® and Wegovy®, including the context, creates a false impression that the "compounded semaglutide" product has equivalent safety and efficacy as Ozempic® and Wegovy®.

    c.    Whether Defendants knew or should have known "the same active ingredient" statements are false and/or misleading;

    d.    Whether Defendants have violated the state consumer protection statutes alleged herein;

    e.    Whether Defendants were unjustly enriched;

    f.    Whether Plaintiffs and Class members have suffered an ascertainable loss of monies or property or other value as a result of Defendants' deceptive and unlawful conduct;

    g.    Whether Plaintiffs and Class members are entitled to relief and, if so, the nature of such relief.

125. **Typicality**: Plaintiffs' claims are typical of those of other Class members because, like all members of the Class, Plaintiffs purchased "compounded semaglutide" based upon false or misleading statements and sustained economic loss as a result. Defendant's conduct that gave rise to the claims of Plaintiffs is the same for Plaintiffs and all members of the Class.

126. **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel that is experienced in litigating complex cases. Plaintiffs have no interests which conflict with those of the Class. Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

127. **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy for the following reasons:

h. The damages suffered by each individual member of the Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

i. Even if individual members of the Class had the resources to pursue individual litigation, it would pose a unreasonable burden on the court system for these cases to be litigated on an individual basis;

j. Absent a class action mechanism, Plaintiffs and members of the Class will continue to suffer harm as a result of Defendants' unlawful conduct because individual litigation is wholly impractical and cost prohibitive; and

k. This action presents no difficulty that would impede its management by the Court as a class action.

### FIRST CAUSE OF ACTION
**Deceptive Business Practices in Violation of Illinois Consumer Fraud and Deceptive Trade Practices Act (815 ILCS 505/1, et seq.)**

128. Plaintiffs incorporate the preceding paragraphs as if fully written herein.

129. Plaintiffs bring this claim individually and on behalf of the appropriate members of the Class.

130.    Plaintiffs and the proposed Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS § 505/1(c).

131.    Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

132.    At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f).

133.    Plaintiffs and the proposed Class are "consumers" who purchased the products identified herein for personal, family, or household use within the meaning of the ICFA, 815 ILCS § 505/1(e).

134.    The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices," which includes "the use or employment of any . . . false pretense, false promise, misrepresentation . . . of any material fact." 815 ILCS 505/2.

135.    A "claim for 'deceptive' business practices under the [ICFA] does not require proof of intent to deceive." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) (citation omitted). The defendant, however, must intend for consumers to rely on the aspects of the advertising that are alleged to be deceptive.

136.    As with other sophisticated corporate entities, Defendants formulate an advertising strategy for its "compounded semaglutide" products in order to entice consumers to purchase the products. Defendants know that consumers will not inject substances into their body without reasonable assurances that the product is safe and effective. If Defendants told consumers the truth—that its product is different than Ozempic® and Wegovy®, uses a different active ingredient with different peptides in addition to the semaglutide molecule, is manufactured with little to no oversight, has never been meaningfully tested for safety or effectiveness, and has never been evaluated by FDA—then consumers would either not buy the product or they would pay far less

for it. Therefore, Defendants intentionally deceived consumers into believing its product is as safe

and effective as Ozempic® and Wegovy®, including because it uses "the same active ingredient,"

which is false.

137.    These false and/or misleading representations regarding the "compounded

semaglutide" product violate the ICFA (815 ILCS 505/2).

138.    Plaintiffs and the other Illinois Class Members purchased "compounded

semaglutide" based on their reasonable reliance on Defendant's false and misleading advertising.

139.    Plaintiffs and the other Illinois Class Members suffered economic harm as a

proximate result of Defendant's violations of the ICFA by purchasing a product they never would

have purchased absent the deceptive practices given the risk of injecting unknown and untested

peptide molecules and other compounds into their bodies, as described above.

140.    Alternatively, to the extent that Defendants' "compounded semaglutide" is

considered to have value for consumers despite the risk of negative health side effects, Plaintiff

and Illinois Class Members were harmed by purchasing a product whose true value, absent the

deception, was far less than what they paid.

141.    Through their deceptive acts and practices, Defendants have been unjustly

enriched, and continue to be unjustly enriched, by unfairly obtaining money from members of the

Class.

142.    Based on Defendant's deceptive acts or practices, Plaintiff and the Illinois Class

members are entitled to relief under 815 ILCS §505/10a.

**SECOND CAUSE OF ACTION**
**Concealment and Suppression of Material Facts in Violation of the Illinois Consumer**
**Fraud and Deceptive Trade Practices Act 815 ILCS 505/1, et seq.**

143.    Plaintiffs incorporate the preceding paragraphs as if fully written herein.

144.    Plaintiffs bring this claim individually and on behalf of the appropriate members of the Class.

145.    The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices," which includes "concealment, suppression or omission of any material fact." 815 ILCS 505/2.

146.    A material fact about Hims & Hers's "compounded semaglutide" is that it is not made with "the same active ingredient as Ozempic® and Wegovy®," as Defendants deceptively claim, but is made with a different active ingredient, made by a fundamentally different process, and contains different peptide molecules that are not contained in Ozempic® and Wegovy®, along with the semaglutide molecule. A related material fact is that Hims & Hers's different product has never been meaningfully tested nor evaluated by FDA. Another related material fact is that this different product subjects consumers to health risks that have never been meaningfully evaluated.

147.    Defendant has concealed and suppressed the aforementioned material facts by, among other things, repeatedly falsely and misleadingly claiming the product is made with "the same active ingredient as Ozempic® and Wegovy®" and otherwise failing to disclose the true nature of the product and the potential risks.

148.    The aforementioned concealment and suppression violates the ICFA.

149.    Given Defendants' concealment and suppression most consumers do not know that the "compounded semaglutide" product is different than Ozempic® and Wegovy®," is made with a different active ingredient that is made by a fundamentally different process and contains peptides that are not contained in Ozempic® and Wegovy®. Consumers additionally do not know that this different product has never been meaningfully tested nor evaluated by FDA. Consumers additionally do not know that this product subjects them to potential health risks that are not present

with Ozempic® and Wegovy®.

150.    Defendants intend for consumers to rely on its concealment and suppression. Consistent with this intention, consumers do rely on said concealment and suppression.

151.    Plaintiffs and the class members have suffered economic loss as a result of Defendants' violation of the ICFA.

152.    Based on Defendants' concealment and suppression, Plaintiffs and the Class members are entitled to relief under 815 ILCS §505/10a.

### THIRD CAUSE OF ACTION
**Deceptive Business Practices in Violation of Other Similar State Statutes**

153.    Plaintiffs incorporate the preceding paragraphs as if fully written herein.

154.    Plaintiffs bring this claim on behalf of the members of the proposed Class.

155.    As described above, Defendant has engaged in deceptive practices in their advertising of "compounded semaglutide." Through these deceptive practices, Defendant has falsely and misleadingly claimed that the "compounded semaglutide" product is made with "the same active ingredient as Ozempic® and Wegovy®," which falsely and misleadingly implies that the product is as safe and effective as Ozempic® and Wegovy®.

156.    Through this deceptive conduct, which violated, and continues to violate, the ICFA (815 ILCS 505/2), Defendant has simultaneously violated, and continue to violate similar state consumer protection statutes, including at least California (Cal. Bus. & Prof. Code § 17200, et seq. & Cal. Civ. Code § 1750, et seq.) and New York (NY GBL §§ 349-50), among others.

157.    Plaintiffs and the other Class Members purchased "compounded semaglutide" based on their reasonable reliance on Defendant's false and misleading advertising.

158.    Plaintiffs and Class Members suffered economic harm as a proximate result of Defendant's violations of these statutes by purchasing a product they never would have purchased

absent the deceptive practices.

159.    Alternatively, to the extent that "compounded semaglutide" is considered to have value, Plaintiffs and Class Members were harmed by purchasing a product whose true value, absent the deception, was far less than what they paid.

160.    Through their deceptive and misleading acts and practices, Defendants have been unjustly enriched, and continue to be unjustly enriched, by unfairly obtaining money from members of the Class.

161.    Based on Defendants' deceptive acts or practices, Plaintiffs and the Class members are entitled to relief under the aforementioned state statutes.

### FOURTH CAUSE OF ACTION
### Unjust Enrichment

162.    Plaintiffs incorporate the preceding paragraphs as if fully written herein.

163.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class.

164.    Plaintiff and the members of the proposed class conferred a benefit on Defendants in the form of payments for the product.

165.    Defendants accepted and retained these payments, even though it falsely and misleadingly described the product.

166.    It would be unjust and inequitable for Defendants to keep the money without compensating Plaintiffs and members of the proposed Class because Defendant misled consumers into purchasing the product.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendants as follows:

A.  Certification of the proposed Class, including appointing Plaintiffs' counsel as Class counsel and Plaintiffs as Class Representatives;

B.  An award of compensatory damages in an amount to be determined at trial;

C.  An award of restitution in an amount to be determined at trial;

D.  An award of disgorgement in an amount to be determined at trial;

E.  An award of statutory damages in an amount to be determined at trial, except as to those causes of action where statutory damages are not available by law;

F.  An award of punitive damages in an amount to be determined at trial, except as to those causes of action where punitive damages are not available by law;

G.  An award of treble damages, except as to those causes of action where treble damages are not available by law;

H.  An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.  For reasonable attorneys' fees and the costs of suit incurred; and

J.  For such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all Counts and as to all issues.

Dated: February 20, 2026

Respectfully Submitted,

By: */s/ John D. Polivick*
John D. Polivick
Polivick Law Firm
250 Parkway Dr., Suite 150
Lincolnshire, IL 60069
312-530-0085
john@polivicklawfirm.com
Atty. No. 65510

*Attorney for Plaintiffs and Putative Class*